UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| AUTUMN MARIE PAULS,<br><br>                Plaintiff,<br><br>   v.<br><br>RICH GREEN, Sheriff of Adams County, in his official and individual capacity, and BUTCH GIBSON, jailer, in his official and individual capacity, JOHN AND JANE DOES 1-5, in their official and individual capacities,<br><br>                Defendants. | Case No. 4:08-cv-00337-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it defendant Butch Gibson's Motion for Reconsideration (Dkt. 74). Gibson asks the Court to reconsider its earlier finding that the grievance procedures at Adams County Jail are not available to inmates after they transfer out of the jail. The Court finds that the decisional process would not be aided by oral argument, and it will resolve these motions after consideration of the parties' written submissions. D. Idaho L. Civ. R. 7.1(d). For the reasons stated below, the Court will deny the Motion for Reconsideration.

MEMORANDUM DECISION AND ORDER - 1

## THE LEGAL STANDARD

A motion to reconsider an interlocutory ruling requires an analysis of two important principles: (1) error must be corrected; and (2) judicial efficiency demands forward progress. The former principle has led courts to hold that a denial of a motion to dismiss or for summary judgment may be reconsidered at any time before final judgment. *Preaseau v. Prudential Ins. Co.*, 591 F.2d 74, 79–80 (9th Cir.1979). While even an interlocutory decision becomes the "law of the case," it is not necessarily carved in stone. Justice Oliver Wendell Holmes concluded that the "law of the case" doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Messinger v. Anderson*, 225 U.S. 436 (1912). "The only sensible thing for a trial court to do is to set itself right as soon as possible when convinced that the law of the case is erroneous. There is no need to await reversal." *In re Airport Car Rental Antitrust Litig.*, 521 F. Supp. 568, 572 (N.D. Cal.1981) (Schwartzer, J.).

The need to be right, however, must be balanced with the need for forward progress. A court's opinions "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill.1988). "Courts have distilled various grounds for reconsideration of prior rulings into three major grounds for justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence or an expanded factual record; and (3) need to correct a clear error or to prevent manifest injustice." *Louen v. Twedt*, 2007 WL 915226 (E.D. Cal. Mar. 26, 2007). If the motion to

reconsider does not fall within one of these three categories, it must be denied.

## ANALYSIS

### A.   Background

In his original motion to dismiss, Gibson argued that Pauls had failed to exhaust her administrative remedies before bringing this action. The relevant administrative procedures are set forth in Adams County Jail's Inmate Handbook. Pauls argued that these procedures were no longer available to her because, among other things, she was transferred to a different prison shortly after the alleged sexual assault.

As discussed further below, the handbook does not address what should happen in the event of a transfer. In deciding the motion, however, the Court reviewed the handbook in conjunction with the following deposition testimony from Sheriff Green:

> Q:   Okay. Do you have a policy or procedure set for inmates to report sexual abuse outside of the agency?
>
> A:   No.
>
> Q:   Like to the prosecutor's office, for example, or State Police?
>
> A:   We don't have a policy with regard to that.
>
> Q:   Okay.
>
> A:   Once they're outside the facility you've asked, is that correct?
>
> Q:   Whether they could report to someone outside the facility through the process?
>
> A:   Oh, oh, while they're in custody?
>
> Q:   Right.

> A: Oh, yeah, yeah, oh, yeah, yeah, they're advised of that.

*Green Dep. (Dkt. 52-2)*, at 76:22 to 77:12. The Court relied on this testimony in concluding that Gibson had failed to satisfy his burden of proving that the jail's grievance remained "available" to Pauls after she transferred out of the jail.

In this motion, Gibson argues that the Court should reconsider this finding for two reasons. He first argues that he was blindsided because Pauls did not cite or rely on this deposition testimony. Second, Gibson argues that, in any event, the Court misunderstood Sheriff Green's testimony.

On reconsideration of this testimony, the Court is persuaded by Gibson's argument that Sheriff Green was testifying as to whether inmates could report sexual assault to someone outside the agency – not whether inmates who had transferred to a different facility could report a sexual assault to someone at Adams County.

The Court will therefore re-evaluate its broader holding that the relevant grievance procedures were not available to Pauls after the transfer. In reconsidering this issue, the Court will rely upon the evidence before it in the first motion. The Court will not consider Sheriff Green's newly submitted affidavit. Nothing prevented Sheriff Green from submitting this affidavit earlier.

## B. The Exhaustion Requirement[1]

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be

---

[1] For ease of reference, the relevant sections of the Court's September 7, 2011 order are repeated here. *See Order (Dkt. 70)*, at 4-6.

MEMORANDUM DECISION AND ORDER - 4

brought with respect to prison conditions under section 1983 of this title . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). This requirement is intended to give "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id.* at 204.

Proper exhaustion is required, meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). By its plain terms, however, the PLRA requires prisoners to exhaust only those avenues of relief that are "available" to them. 42 U.S.C. § 1997a(e). A claim that a prisoner failed to exhaust administrative remedies is an affirmative defense that should be brought as an unenumerated motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2002). The district court may consider matters outside of the pleadings and can resolve disputed issues of fact, if necessary. *Id.* at 1119-20. Defendants bear the burden of raising and proving the absence of exhaustion. *See, e.g., Jones*, 549 U.S. at 216.

## C. Availability of Administrative Procedures

The Prison Litigation Reform Act does not expressly address an inmate's obligation to grieve violations of constitutional rights in one facility when incarcerated in another, or under what circumstances the grievance procedure in one facility should be

considered "available" to an inmate who has been transferred to another. The cases are not uniform on this topic, and the Ninth Circuit has yet to address the precise issue faced by this Court.[2] Many courts hold that the mere fact of a transfer does not affect a prisoner's obligation to exhaust his administrative remedies before filing suit. *See, e.g., Napier v. Laurel County*, 636 F.3d 218, 223-24 (6th Cir. 2011); *Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 35 (1st Cir. 2002). Others are more lenient (particularly in the case of a transfer from a county facility to a state facility), concluding that such a transfer may render administrative remedies at the transferor facility unavailable. *See Rodriguez v. Westchester County Jail Correctional Dep't,* 372 F.3d 485, 488 (2d Cir. 2004) (transfer from county jail to state prison rendered administrative procedure unavailable); *Bradley v. Washington*, 441 F. Supp. 2d 97, 102–03 (D.D.C. 2006) (prisoner who sued county jail officials was not required to exhaust jail's administrative remedies after transfer to two different federal facilities because the jail's grievance policy did not provide for grievance submission from outside the facility).

Under either approach, the analytical starting point is the transferor jail's regulations. Some courts hold that the regulations need not explicitly allow transferred

---

[2] Most courts agree that grievance procedures at a transferor facility remain available to prisoners transferred to a different prison if both prisons are administered by the same agency. *See, e.g., Flournoy v. Schomig*, 152 Fed. Appx. 535, 537-38 (7th Cir. 2005) (unpublished order) (PLRA's exhaustion requirement not satisfied where administrative procedures provided for the pursuit of a grievance following prisoner's transfer to another state institution); Carini v. Austin, 2008 WL 151555, at *4 (S.D.N.Y. Jan. 14, 2008); *Finger v. Superintendent McFinnis*, 2004 WL 1367506, at *4 (S.D.N.Y. June 16, 2004). Those cases are inapplicable here, as Pauls was transferred from a county jail to a state prison.

inmates to file grievances. Instead, the key is whether they prohibit transferred inmates from using grievance procedures. *See, e.g., Napier*, 636 F.3d at 223; *Medina-Claudio*, 292 F.3d at 35 ("Nothing in the regulations explicitly prohibits Medina-Claudio from filing an administrative complaint while temporarily housed in another facility."). The Sixth Circuit, in particular, rejected any notion that the regulations must expressly provide a mechanism for filing a grievance after a transfer. *Napier*, 663 F.3d at 223 ("a jail's grievance policies need not explicitly provide for all possible scenarios in which a prisoner may seek to file a grievance").

The relevant procedure for Adams County Jail is set forth in its Inmate Handbook, which provides:

> If you are sexually assaulted, immediately report it to a staff member or more than one staff member if necessary. You may also kite the Jail Commander or Sheriff directly or any other staff member you feel comfortable reporting this to. You may also utilize the inmate grievance procedure. Do not clean yourself, brush your teeth, wash your clothes or do anything else that could destroy evidence of the assault. The sooner you report the assault the better the chances evidence can be obtained that will help prove the assault.

Dkt. 47-2, at 13 (Inmate Handbook). The introduction to the handbook states, "All inmates *in this facility* are subject to the laws of the State of Idaho and the Rules of the ADAMS COUNTY JAIL." *Id.* at 2 (emphasis added). The handbook does not address whether its procedures continue to apply to inmates after they have been transferred to a different facility.

Gibson invokes the reasoning of First and Sixth Circuits to argue that Adams

MEMORANDUM DECISION AND ORDER - 7

County Jail's administrative procedures remained available to Pauls — even after she was transferred and despite the fact that the Inmate Handbook says absolutely nothing about transfers. The Court cannot accept this argument. It requires prisoners faced with unclear or vague policies to nonetheless attempt to grieve incidents in an effort to find out if those policies are available. *See Napier*, 636 F.3d at 224.

This analysis confuses the burden of proof. It is the defendants who must first show that the administrative procedures are available. Only then does the issue of what Pauls did (or did not do) to utilize those procedures becomes relevant. In that regard, the Court agrees with Judge Martin's dissent in *Napier v. Laurel County:* "I believe we should only reach the issue of attempted exhaustion if we first expressly determine that administrative processes were available." 636 F.3d at 228 (Martin, J., dissenting).

The Court further notes that *Napier* is factually distinguishable. There, the majority pointed out that at least one other prisoner had grieved an incident at the county jail after a transfer: "Most powerfully, the defendants submitted evidence that a different prisoner has, in fact, filed a grievance at LCDC [Laurel County Detention Center] while incarcerated elsewhere in the state." 636 F.3d at 225. There is no such evidence here.

Further, courts typically hold that grievance procedures are available to transferred inmates where the transferor and transferee facilities are either managed by the same entity or have inter-facility agreements spelling out grievance procedures for transferred inmates. *See, e.g., Bradley*, 441 F. Supp. 2d at 103 (citing cases); *Veenstra III v.*

*Corrections Corp. of Am.* Case No. 1:09-cv-573-EJL, 2011 WL 3566853 (D. Idaho Aug. 15, 2011) (inter-facility agreement expressly addressed grievance procedures after a transfer between facilities); *Parmer v. Idaho Correctional Corp.*, Case No. 1:08-cv-45-S-BLW, 2009 WL 735646, at *4 (D. Idaho Mar. 19, 2009) (inter-facility agreement allowed grievances filed at first prison to be forwarded to transferee prison); *see also Napier*, 636 F.3d at 227 (Martin, J., dissenting) (citing cases; criticizing majority for relying on these types of distinguishable cases to support its holding). These transfers "leave the inmate's access to agency grievance procedures intact and, as a result, have no impact on the inmates' obligation to exhaust the agency's administrative remedies." *Bradley*, 441 F. Supp. 2d at 103. Here, there is no evidence of inter-facility cooperation between the county jail and the state prison regarding grievance procedures.

Finally, the fact that Sheriff Green initiated a criminal investigation after Pauls' transfer does not prove that administrative procedures were, in fact, available to Pauls. The Inmate Handbook speaks to investigations by outside agencies, as well as internal, administrative investigations. *See Inmate Handbook (Dkt. 47-2)*, at 14. ("All reported sexual assaults will be reported to the proper authorities. Each case will also be administratively investigated."). Moreover, there is other circumstantial evidence tending to show that the Adams County was not set up to handle grievances filed by transferred inmates. For example, Sheriff Green testified that Adams County did not offer any

assistance to Pauls after learning of the incident because Pauls had been transferred.[3] *See Green Dep. (Dkt. 52-2)*, at p. 86, ln. 21 to p. 87, ln. 1 ("Pauls was not in our custody at the time this incident was discovered, and so therefore there was no opportunity for Adams County to offer any assistance."). In short, the circumstantial evidence does not ultimately assist Gibson in showing that Adams County Jail procedures remained available to Pauls after the transfer. Thus, on reconsideration, the Court again finds that the Adams County Jail administrative procedures were not available to Pauls after she left the facility.

## ORDER

**IT IS ORDERED** that defendant Butch Gibson's Motion for Reconsideration (Dkt. 74) is **GRANTED** in part and **DENIED** in part. As explained, the motion is granted to the extent that the Court will reconsider its interpretation of Sheriff Green's cited deposition testimony. The Court further concludes that even without this testimony, Gibson has failed to demonstrate that Adams County Jail's administrative procedures remained available to Pauls after she left the jail. The motion is thus **DENIED** to the extent Gibson argues Pauls failed to exhaust her administrative remedies under the Prison Litigation Reform Act.

---

[3] Pauls is required to file a grievance even if the County could not grant the particular relief requested. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). So the mere fact that Adams County could not provide counseling services does not excuse Pauls' failure to file a grievance. Nevertheless, this testimony provides some circumstantial evidence that Adams County did not have grievance procedures in place for transferred inmates.



DATED: **November 14, 2011**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge